**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

OLLIA JUNIOR,
o/b/o D.G., a minor,[1]

    *Plaintiff*,

v.                                                                  CASE NO. 12-CV-13791

COMMISSIONER OF                          DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                           MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[2]

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff's minor child, D.G., is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The docket refers to the plaintiffs as Darryl Galloway, Jr., and Ollia Harris. However, Ollia's last name is actually Junior, her maiden name was Harris, and the minor's name is Darryl Galloway, who should have been referred to as D.G. (Tr. at 29-30.) Rule 5.2(a)(3) of the Federal Rules of Civil Procedure prohibits the use of a minor's name and requires that only a minor's initials be used.

[2] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income ("SSI") benefits for Plaintiff's minor child. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 13.)

Plaintiff's son, D.G., was five years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 37.) Plaintiff filed the instant claim on September 21, 2009, alleging that D.G.'s disability began on January 16, 2007. (Tr. at 102.) The claim was denied at the initial administrative stages. (Tr. at 57.) In denying the claims, the Defendant Commissioner considered cleft palate and speech and language delay as possible bases of disability. (*Id.*) On November 2, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Jeanne M. VanderHeide, who considered the application for benefits *de novo*. (Tr. at 8-26, 27-56.) In a decision dated January 7, 2011, the ALJ found that D.G. was not disabled. (Tr. at 23.) Plaintiff requested a review of this decision on March 11, 2011. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 23, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On August 27, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. §

5

1382c(a)(3)(C)(i). To determine whether a child's impairment results in marked and severe limitations, Social Security Administration ("SSA") regulations[3] prescribe a three-step sequential evaluation process:

    1.    If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

    2.    If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

    3.    If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). In the third step – namely, whether a child's impairment functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. *Id.* § 416.924(d). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an irrebuttable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe

---

[3]For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

impairment-related functional limitations." *Id*. An impairment that shows some but not all of the criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). If a child's impairments do not "meet" a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. 20 C.F.R. § 416.926a(a). A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." *Id*.

Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It "is 'more than moderate' but 'less than extreme.'" *Id.*

### D.   ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that D.G. was born on December 30, 2004, and therefore was an older infant on the alleged onset date of January 16, 2007, was a preschooler on the date of the hearing, and that he had not engaged in substantial gainful activity since September 21, 2009, the application date. (Tr. at 14.) At step two, the ALJ found that D.G.'s cleft lip, speech impairment, and mild hearing loss in left ear were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ

7

found no evidence that D.G.'s combination of impairments met or equaled one of the listings in the regulations. (Tr. at 14-23 .) Therefore, the ALJ found that A.C. was not disabled. (Tr. at 23.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff's son, D.G., underwent his first left cleft lip and palate repair surgery on August 8, 2005, when he was seven months of age. (Tr. at 156-58.) Another surgical repair was performed on December 8, 2009, when D.G. was four years old. (Tr. at 185-87.)

D.G. was evaluated at the Futures HealthCore, L.L.C., by Maria Canarecci, M.A., ("Canarecci") on October 5 and 12, 2009. (Tr. at 175-77.) D.G.'s clinical assessment of articulation and phonology ("CAAP") test resulted in a "standard score of < 55." (Tr. at 175-76.) D.G "fell within age-appropriate skills in regards to both Receptive Language and Expressive Language." (Tr. at 176.) Canarecci also concluded that D.G.'s "oral mechanism appears adequate for speech production" and noted that he "reportedly does not have any difficulties with eating, chewing, or swallowing." (*Id.*) Canarecci indicated that D.G.'s "[v]ocal quality appeared adequate for conversational speech and classroom communication needs." (*Id.*) Canarecci concluded that D.G. had "moderate articulation deficit" and recommended "speech therapy" and the providing of "[i]nformation and strategies" to the family and teachers. (Tr. at 177.)

On January 13, 2010, Ms. Canarecci assessed D.G.'s conversational speech to be intelligible 75% of the time when the context is known and 65% when the context is unknown and that repetition increased intelligibility by 5% overall. (Tr. at 191.) She further indicated that D.G.'s utterances and length of utterances or MLUs were within normal limits, his expressive and receptive language skills were within normal limits, his vocal quality was within normal limits, and his current language skills were within normal limits for his age. (Tr. at 191-92.)

A Teacher Questionnaire was completed by Kimberly Minner ("Minner") of the Taylor Head Start preschool program on January 7, 2010. (Tr. at 121-28.) The ratings scale included numbers corresponding to "no problem," "a slight problem," "an obvious problem," "a serious problem" and "a very serious problem." As to acquiring and using information, Ms. Minner indicated that D.G. had a slight problem understanding and participating in class discussions but otherwise had no problems in comprehending oral instructions, understanding school and content vocabulary, providing organized oral explanations and adequate descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (Tr. at 122.) As to attending and completing tasks, Minner concluded that D.G. had no problem sustaining attention during play/sports activities, refocusing to task when necessary, carrying out single-step instructions, carrying out multi-step instructions, changing from one activity to another without being disruptive, organizing his own things or school materials, completing class/homework assignments, and working without distracting himself or others. (Tr. at 123.)

Minner, however, found that D.G. had a slight problem paying attention when spoken to directly on a weekly basis, focusing long enough to finish an assigned activity or task on a monthly basis, waiting to take turns on a weekly basis, and working at a reasonable pace on a weekly basis. (*Id.*) As to interacting and relating with others, Minner concluded that D.G. had no problem making and keeping friends, seeking attention appropriately, asking permission appropriately, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting meaning of facial expression, body language, hints, sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.

(Tr. at 124.) Minner also concluded that D.G. had a slight problem playing cooperatively with other children on a weekly basis, expressing anger appropriately on a monthly basis, following rules on a monthly basis, and respecting/obeying adults in authority on a monthly basis. (*Id.*) Minner commented that D.G. is "at times rough with others and fights . . . may hit others." (*Id.*) Minner indicated that she can understand D.G.'s speech one-half to two-thirds of the time on his first attempt and that she can understand almost all of his speech after repetition or rephrasing. (Tr. at 125.) Minner found no problems in the moving-about-and-manipulating-objects domain and no problems in the caring-for-himself domain, except for a slight problem in being patient when necessary on a weekly basis and a slight problem responding appropriately to changes in mood, i.e., calming self, on a monthly basis. (*Id.*)

On February 4, 2010, Shakti Kaul, M.D., completed a Childhood Disability Evaluation form. (Tr. at 202-07.) Dr. Kaul concluded that D.G. had no limitation in acquiring and using information, marked limitation in interacting and relating with others, and a less than marked limitation in health and physical well-being.[4] (Tr. at 204-05.)

At the administrative hearing, D.G.'s mother testified that D.G. was five years old and that he has undergone surgery to correct a cleft lip and will need another revision surgery between the ages of six and eight. (Tr. at 37-38, 41.) She also indicated that D.G. suffered from lead poisoning as a baby and that he has tubes in his left ear. (Tr. at 38.) D.G. attends kindergarten and is receiving speech therapy four times per month. (Tr. at 39.) D.G. also sees a therapist because he "acts out in school a lot, he shuts down, he doesn't want to talk, he don't want to do his work[.]" (*Id.*) D.G.'s mother further testified that D.G. "loves" to read books, and that he can answer the phone

---

[4]Dr. Kaul did not state a conclusion as to attending and completing tasks, but the comments indicate "slight problems" completing tasks. (Tr. at 204.) In addition, Dr. Kaul did not make any conclusions as to the moving-about-and-manipulating-objects domain or the caring-for-yourself domain, but simply noted that D.G. had a slight problem calming himself down. (Tr. at 205.)

and take and deliver messages. (Tr. at 40.) She also testified that D.G. "communicates okay," but "lashes out" and "don't really communicate to me very well" and instead "throws stuff" "if he wants something or if somebody did something to him[.]" (*Id.*)

D.G.'s mother also stated that D.G. is able to watch an entire television show without being distracted and that he likes to play handheld games and "will sit there all day if you let him[.]" (Tr. at 41-42.) She also indicated that D.G. has difficulty hearing in his left ear. (Tr. at 42-43.) D.G. is able to follow his mother's directions and he plays with children in the neighborhood who are older than he is; they ride bikes and play with toys and games. (Tr. at 43-44.) D.G.'s mother also testified that D.G. cooperates with her "[s]ometimes" and gets along with her husband and their close friends. (Tr. at 45.) She also stated that D.G. is able to take care of himself, put on his own clothes and shoes and that he is aware of risky behaviors, such as running out into the street without looking for cars. (*Id.*) D.G. is self-conscious of the way he talks, thinks of himself as "ugly," and sometimes pulls at his skin when he is upset. (Tr. at 45-46.)

When Plaintiff's counsel asked D.G.'s mother whether strangers have a difficult time understanding D.G., she responded, "Well, I don't know because just like when you told him – asked him can you say hi, he don't say anything. So – he only talk when we're around out family . . . so it's kind of hard to tell." (Tr. at 48-49.)

When interviewed by the ALJ, D.G. indicated that he has a "PSP" brand of video game player, that he prefers to "[p]lay it at my house," and that he likes "[w]restling" games the best. (Tr. at 52.) When asked whether he prefers to play alone or with his brothers, he responded, "[p]lay with my b[r]others," and answered "yes" to questions regarding whether he liked to ride bikes, play football, and whether he is a fast runner. (Tr. at 52.) D.G. also stated that he likes to "catch" the ball better than throwing it, and that school is "fun" and the thing he likes most is to "draw."

(Tr. at 53.) When questioned by counsel, D.G. indicated that his teacher's name is "Ms. Sizemore" and that she is nice but does yell sometimes because the students do not behave well all the time. (Tr. at 54.)

### F. Analysis and Conclusions

#### 1. Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's child disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ incorrectly held that Plaintiff did not meet or equal the requirements of Listing 2.09. (Doc. 12 at 6-11.) "Functional equivalence is determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in two 'domains' or an 'extreme' impairment in one domain." *Kelly v. Comm'r of Soc. Sec.,* 314 F. App'x 827, 829 (6th Cir. 2009) (quoting 20 C.F.R. § 416.926a(d)). An extreme limitation is defined as one that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and that is "more than marked." 20 C.F.R. § 416.926a(e)(3).

In the instant case, the ALJ found that D.G. has a mild limitation in acquiring and using information, a mild limitation in attending and completing tasks, a marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in the ability to care for himself, and a moderate limitation in health and physical well being. (Tr. at 17-23.) Plaintiff contends that D.G. has a marked rather than moderate limitation in the area of health and physical well being. (Doc. 12 at 9-10.)

As to Listing 2.09, the ALJ noted that this Listing requires that conversation be intelligible no more than half the time and that the evidence of record showed that although D.G. has articulation deficits, it was not sufficient to meet the Listing. (Tr. at 15.) Plaintiff contends that this finding is not supported by substantial evidence because D.G. "scored less than 55 on the Clinical Assessment of Articulation and Phonology test" and because "Plaintiff-mother has also indicated the claimant is only understood some of the time by those who know him well and he rarely communicates with others." (Doc. 12 at 8.)

I suggest that substantial evidence supports the ALJ's conclusion that Plaintiff has less than a marked limitation in the domain of health and physical well being. Although Canarecci noted moderate articulation deficit and concluded that D.G.'s clinical assessment of articulation and phonology ("CAAP") test resulted in a "standard score of < 55" in 2009, she also found that D.G "fell within age-appropriate skills in regards to both Receptive Language and Expressive Language." (Tr. at 175-76.) Canarecci also concluded that D.G.'s "oral mechanism appears adequate for speech production" and noted that he "reportedly does not have any difficulties with eating, chewing, or swallowing." (*Id.*) Even if Canarecci's 2009 assessment supported Plaintiff's argument, in 2010 Canarecci found D.G.'s conversational speech to be intelligible 75% of the time when the context is known and 65% when the context is unknown and that repetition increased

13

intelligibility by 5% overall. (Tr. at 191.) She further indicated that D.G.'s utterances and length of utterances or MLUs were within normal limits, that his expressive and receptive language skills were within normal limits, his vocal quality was within normal limits, and that his language skills were within normal limits for his age. (Tr. at 191-92.) I therefore suggest that when all of Ms. Canarecci's findings are considered, her opinion supports only a finding of a less than marked limitation in the health-and-physical-well-being domain. In addition, D.G.'s teacher's conclusions do not support a marked limitation in any domain. (Tr. at 121-28.) Finally, and most importantly, the only medical source to have evaluated D.G. concluded that D.G. has a less than marked limitation in health and physical well-being. (Tr. at 204-05.) I therefore suggest that not only does substantial evidence support the ALJ's findings that D.G. has a less than marked limitation in the domain of health and physical well being, but that a contrary conclusion would not be supported by substantial evidence. *See McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545.

I further suggest that the record evidence could not support a finding that D.G. meets or equals Listing 2.09.

> [U]nder SSR 98-1p, a child with marked limitations in his cognitive functioning and speech is considered to have a combination of impairments that medically equals Listing 2.09, the adult listing dealing with speech impairments. *See* SSR 98-1p. A child has a marked limitation in his cognitive functioning if his score on standardized intelligence tests is two or more standard deviations below the norm for that test. A child is markedly limited in his ability to speak if he is intelligible no more than half to two-thirds of the time. *See id.*

*Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 753 (11th Cir. 2011). In the instant case, there is no evidence of limitation, let alone marked limitation in D.G.'s cognitive functioning. The evidence supports only a contrary result. (Tr. at 122-23, 175-76, 204-05.) As to his ability to speak intelligibly, the evidence also supports the ALJ's findings. D.G.'s teacher, Ms. Minner, indicated that she can understand D.G.'s speech one-half to two-thirds of the time on his

first attempt and that she can understand almost all of his speech after repetition or rephrasing. (Tr. at 125.) In addition, Ms. Canarecci assessed D.G.'s conversational speech to be intelligible 75% of the time when the context is known and 65% when the context is unknown and that repetition increased intelligibility by 5% overall. (Tr. at 191.)

I therefore suggest that substantial evidence supports the ALJ's findings that D.G. is less than markedly limited in the domain of health and physical well-being, that he does not meet or equal Listing 2.09, and that D.G. is not disabled.

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                              s/ Charles E Binder
                                            CHARLES E. BINDER
Dated: July 23, 2013                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: July 23, 2013                    By    s/Patricia T. Morris
                                                               Law Clerk to Magistrate Judge Binder